UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CORA CAVE,

    Plaintiff,

v

GENESEE COUNTY; ERIC SORDYL,
in his individual capacity; OFFICER
JANE DOE, in her individual capacity;

    Defendants.

_____/

BRANDON T. WOLFE (P82421)
JAMES B. RASOR (P43476)
**RASOR LAW FIRM, PLLC**
Attorneys for *Plaintiff*
201 E. Fourth Street
Royal Oak, MI  48067
(248) 543-9000/ Fax: (248) 543-9050
btw@rasorlawfirm.com
jbr@rasorlawfirm.com
_____/

# **PLAINTIFF'S COMPLAINT AND JURY DEMAND**

    **NOW COMES** Plaintiff, CORA CAVE, by and through her attorneys, RASOR LAW FIRM, PLLC, and for her Complaint against the above-named Defendants, hereby states as follows:

    1.    This cause of action involves violations of Plaintiff's civil rights, as secured by the United States and Michigan Constitutions, and is brought pursuant to the statutes and common law of the State of Michigan against the above-named Defendants.

1

2. Plaintiff, CORA CAVE (herein "Plaintiff") was, at all times relevant to this lawsuit, a resident of the City of Detroit, County of Wayne, and State of Michigan.

3. At all times relevant to this lawsuit, Defendant Genesee County was a body politic and Municipal corporation organized under the laws of the State of Michigan and is responsible for the operation of the Genesee County Sheriff's Department (herein "GCSD") as well as the individually-named Defendants.

4. At all times material and relevant hereto, Defendant Eric Sordyl was an officer of the Genesee County Sheriff's Department and was acting under the color of state law and in the course and scope of his employment. He is sued in his in his individual capacity.

5. At all times material and relevant hereto, Defendant Jane Doe was an officer of the Genesee County Sheriff's Department and was acting under the color of state law and in the course and scope of her employment. She is sued in her individual capacity and Plaintiff will amend her complaint when Jane Doe's identity becomes known during the course of discovery.

## JURISDICTION AND VENUE

6. This is a civil action for money damages brought pursuant to 42 USC §§ 1983 and 1988, and the First and Fourteenth Amendments to the United States

Constitution against Defendant GCSD and the individual Defendants in their individual capacity.

7. This Court has jurisdiction over Plaintiff's claims brought pursuant to 42 USC §1983 based upon the laws of the United States pursuant to 28 USC §§1331 and 1343.

8. Venue lies in the Eastern District of Michigan pursuant to 28 USC §1391(b). The unlawful actions alleged in this Complaint took place within the City of Flint, County of Genesee, which is located within the Southern Division of the Eastern District of Michigan.

9. The amount in controversy exceeds Seventy-Five Thousand ($75,000) Dollars, excluding interest, costs and attorney fees.

## FACTUAL ALLEGATIONS

10. Plaintiff Cora Cave, being a Muslim, Arab-American woman, adorns a head scarf known as a hijab, which is consistent with her religious beliefs and practices. Plaintiff will refer to her "hijab" as a headscarf for the remainder of the complaint.

11. For religious reasons held by Plaintiff, a headscarf cannot be removed in public places and in accordance with her sincerely held religious beliefs as a devout Muslim, men may not see more than her face, hands, and feet.

12. To Plaintiff, wearing a headscarf is a constant reminder of her faith and her religious obligations, and to have her hair and neck uncovered in public is a serious breach of faith and religious practice, and a deeply humiliating and defiling experience that substantially burdens her religious practice.

13. On December 29, 2018, Plaintiff was stopped by the Michigan State Police ("MSP") while driving her vehicle.

14. Plaintiff was subsequently arrested during this stop for an outstanding warrant, all while continuing to wear her headscarf with no issue.

15. Following this arrest, Plaintiff was taken by MSP to Genesee County Jail for booking.

16. While in the booking area, three male officers were present, including Defendant Eric Sordyl.

17. Shortly thereafter, Defendant Officer Jane Doe arrived alongside the three male officers.

18. Defendants Eric Sordyl and Jane Doe demanded that Plaintiff remove her headscarf.

19. When Defendants made this offensive, baseless demand, Plaintiff informed them that because of her religious beliefs, she could not remove her headscarf in public places, specifically when doing so will result in being seen by various males.

20. Despite Plaintiff's religious-based objections, Defendants forced Plaintiff to remove it, against her will, and given no other option.

21. Although Defendants forced her to publicly remove her headscarf in front of these various men, Defendant Jane Doe then took Plaintiff into a private area to undress and put on the corrections clothes.

22. After having her headscarf removed and putting on the inmate clothes, Plaintiff was then photographed multiple times for booking, during which she was observed by numerous male officers, including Defendant Sordyl.

23. Following the completion of her booking, Plaintiff, lacking her headscarf despite again asking for it, was escorted to an area with other female inmates.

24. While being escorted through the facility, Plaintiff saw and was seen by more males.

25. After she was booked and processed, all without her headscarf, she was taken to an area of the corrections facility where she virtually appeared in front of a male judge for arraignment.

26. While walking to and from this arraignment appearance, she again saw and was observed by various males without her headscarf.

27. Plaintiff was released the following day, at approximately 4:15 pm.

28. During her release, she was permitted to redress, but Defendants did not permit her to put on her headscarf; she was told that she could only put her headscarf on after she left the facility.

29. Before Plaintiff got to a point outside the facility to put on her headscarf, she was again seen by numerous male officers and male visitors of the jail.

30. Likewise, Plaintiff's son had to bond her out the following day, to which he observed his mother without her headscarf on while she waited to be released.

31. Accordingly, Plaintiff was without her headscarf for approximately 12 hours during her stay at Genesee County Jail, wherein she was photographed in front of at least three males and repeatedly observed uncovered by dozens of males, including her own son.

32. Every single instance of being observed by males without wearing her headscarf directly violated her Muslim beliefs, to wit those beliefs were known to Defendants from the moment they forced her to take it off.

33. Defendant GCSD and its employees and agents prohibited Plaintiff from wearing her religious head covering pursuant to what is believed a Genesee County Sheriff's Department practice or official policy.

34. There were reasonable alternatives to Defendants' actions in forcing Plaintiff to publicly remove her headscarf while being photographed for booking and to be constantly observed by numerous males.

35. There was no reasonable and/or penological basis for Defendants to force Plaintiff to either be photographed without her headscarf by males or to be denied the right to wear it while in the correctional facility and/or during court appearances.

36. The booking photographs of Plaintiff without her headscarf are a public record and remain in Defendant's possession today.

## **COUNT I**
## **FIRST AMENDMENT VIOLATION**
## **PURSUANT TO 42 U.S.C. § 1983**
## **AS TO ALL INDIVIDUAL DEFENDANTS**

37. Plaintiff reasserts and re-alleges each and every allegation contained in paragraphs 1 through 36, as if fully set forth herein.

38. This action is brought pursuant to 42 U.S.C. § 1983 against the individual officers in their individual capacities.

39. At all material times, Defendants were acting within the scope of their employment and/or color of law and therefore owed Plaintiff the duty to avoid a violation of her constitutionally guaranteed rights.

40. The First Amendment to the United States Constitution provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof…"

41. The above protections were incorporated as applicable against the States, and other state actors such as Defendants, in the Fourteenth Amendment and enforceable through 42 U.S.C. § 1983.

42. Defendants, as state actors, had a duty not to interfere with Plaintiff's right to exercise her fundamental constitutional right under the First Amendment Free Exercise clause.

43. Under the First Amendment, inmates and pretrial detainees retain some degree of protection afforded by the First Amendment, including protection under its directive that no law or state action shall prohibit the free exercise of religion.

44. Through the actions described above, including but not limited to, forcing Plaintiff to remove her headscarf for booking, prohibiting Plaintiff from covering her head with her headscarf, all while repeatedly being observed by numerous males, forcing Plaintiff to walk around the facility without her headscarf, and forcing Plaintiff to appear for her arraignment without her headscarf denied Plaintiff the right to free exercise of religion and free expression, as guaranteed by the First Amendment and incorporated by the Fourteenth Amendment against Defendants such as these individuals.

45. Through Defendants' actions, Plaintiff was pressured to modify her behavior and to seriously violate her religious beliefs, resulting in her exercise of her religion being substantially burdened.

46. Defendants' interference with Plaintiff's rights was more than an inconvenience or short-term occurrence; it meaningfully curtailed Plaintiff's ability to express adherence to her faith while detained.

47. Any alleged policy that Defendant may have had relating to this type of religious practices was not the least restrictive in terms of Plaintiff's validly held religious beliefs or related to a legitimate penological interest.

48. Defendants' violations were conducted with intentional reckless indifference, particularly in light of Plaintiff's reasonable protests before she was forced to remove her headscarf.

49. Defendants' callous and repeated disregard for Plaintiff's rights rises to a level of deliberate indifference.

50. Defendants' acts and omissions constitute unreasonable restrictions on Plaintiff's free exercise rights guaranteed by the First Amendment and Defendants are not entitled to qualified immunity because Plaintiff had a clearly established right to free exercise while detained at GCSD.

51. That as a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity and has suffered

and continues to suffer mental anguish, emotional distress, severe humiliation and degradation, mortification and embarrassment, as well as loss of religious reputation.

52. Pursuant to 42 U.S.C. §§ 1983 and 1988, Defendants are liable to Plaintiff for all damages allowed under federal law. To the extent that the damages allowable and/or recoverable under one or both of the statutes are deemed insufficient to fully compensate Plaintiff and/or to punish or deter the Defendants, this Court must order additional damages to be allowed so as to satisfy any and all such inadequacies. The conduct of Defendants was and remains extreme and outrageous subjecting Defendants to punitive damages.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against Defendants, jointly and severally, in an amount in excess of $75,000.00, plus costs, interest, and attorney fees, as well as punitive and/or exemplary damages so wrongfully incurred, as the Court deems just.

### COUNT II
### VIOLATION OF THE EQUAL PROTECTION CLAUSE
### PURSUANT TO 42 U.S.C. § 1983
### AS TO ALL INDIVIDUAL DEFENDANTS

53. Plaintiff reasserts and re-alleges each and every allegation contained in paragraphs 1 through 52, as if fully set forth herein.

54. This action is brought pursuant to 42 U.S.C. § 1983 against the individual officers in their individual capacities.

55. At all material times, Defendants were acting within the scope of their employment and/or color of law and therefore owed Plaintiff the duty to avoid a violation of her constitutionally guaranteed rights.

56. The Equal Protection Clause of the United States Constitution requires state actors to treat all similarly situated people equally. Moreover, the Equal Protection Clause entitles each detainee to a reasonable opportunity to pursue her or his faith comparable to the opportunity afforded fellow detainees who adhere to conventional religious precepts.

57. Religion is a suspect classification.

58. Plaintiff was singled out from other detainees based on her religious dress from the moment she entered GCSD's facility, when she was escorted through the facility, and especially when she was forced to take off her headscarf and photographed in front of male officers.

59. Defendants were aware that Plaintiff was a practicing Muslim and had no reason to suspect that this was untrue and/or that she was dangerous or stowing dangerous, elicit materials in her headscarf.

60. When Defendants treated Plaintiff differently from similarly situated detainees and discriminated against her based on her religion and dress, Plaintiff was denied her clearly-established right to equal protection.

61. It is upon information and belief that Defendant GCSD does in fact allow some religious accommodations, just not Plaintiff's.

62. Defendants' violations were conducted with intentional reckless indifference, particularly in light of Plaintiff's reasonable protests before she was forced to remove her headscarf.

63. Defendants' callous and repeated disregard for Plaintiff's rights rises to a level of deliberate indifference.

64. That as a direct and proximate result of Defendants' wrongful acts and omissions, Plaintiff has sustained loss of earnings, earning capacity and has suffered and continues to suffer mental anguish, emotional distress, severe humiliation and degradation, mortification and embarrassment, as well as loss of religious reputation.

65. Pursuant to 42 U.S.C. §§ 1983 and 1988, Defendants are liable to Plaintiff for all damages allowed under federal law. To the extent that the damages allowable and/or recoverable under one or both of the statutes are deemed insufficient to fully compensate Plaintiff and/or to punish or deter the Defendants, this Court must order additional damages to be allowed so as to satisfy any and all such inadequacies. The conduct of Defendants was and remains extreme and outrageous subjecting Defendants to punitive damages.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against Defendants, jointly and severally, in an

amount in excess of $75,000.00, plus costs, interest, and attorney fees, as well as punitive and/or exemplary damages so wrongfully incurred, as the Court deems just.

## COUNT III
## VIOLATION OF RELIGIOUS LAND USE AND INSTITUIONALIZED PERSONS ACT
## PURSUANT TO 42 U.S.C. § 2000CC et seq.
## AS TO DEFENDANT GCSD

66. Plaintiff reasserts and re-alleges each and every allegation contained in paragraphs 1 through 65, as if fully set forth herein.

67. Under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution … even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person – (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."

68. While confining Plaintiff in an institution that receives federal funding, Defendants substantially burdened the practice of her religion by requiring her to remove her headdress in the presence of strangers, particularly men.

69. Specifically, Defendant GCSD receives federal funding for purposes of the operations of its corrections facility.

70. By their actions described above, including by requiring Plaintiff to remove her religious headscarf and photographing her and by prohibiting her from covering her head with her headscarf, including in the presence of male officers, Defendants imposed a substantial burden on Plaintiff's religious exercise in that they forced her to violate a fundamental tenet of her faith and a central component of her religious practice.

71. That substantial burden on Plaintiff's religious exercise neither furthers a compelling governmental interest nor is the least restrictive means of furthering a compelling governmental interest.

72. Accordingly, Defendants have violated Plaintiff's rights under RLUIPA. As a result of Defendants' conduct, Plaintiff suffered, and continues to suffer, extreme shame, humiliation, mental anguish, and emotional distress.

**WHEREFORE,** Plaintiff prays for the following relief from this Honorable Court:

> a. A declaratory judgment that Defendant's policies, practices, and procedures in the past and present substantially burdens arrestees' religious exercise, specifically Muslims like Plaintiff whose religious faith requires a headscarf to be worn, in violation of RLUIPA;
>
> b. An injunction prohibiting Defendant's discriminatory policy or practices that burdens an arrestee's religious exercise, specifically Muslims like Plaintiff whose religious faith requires a headscarf to be worn, in violation of RLUIPA
>
> c. A declaration that Defendant's policies and practices regarding arrestees' ability to wear a religious headscarf violate Plaintiff's and

other similarly situated Muslims' religious exercise pursuant to RLUIPA;

d. An award of interest, costs, and reasonable attorney fees in litigating this matter;

e. All other relief this Honorable Court deems just and proper.

## COUNT IV – MUNICIPAL LIABILITY INADEQUATE POLICIES/ PROCEDURES/ CUSTOMS, FAILURE TO TRAIN, RATIFICATION/ACQUIESENCE AS TO DEFENDANT GCSD

73. Plaintiff reasserts and re-alleges each and every allegation contained in paragraphs one through 72, as if fully set forth herein.

74. Pursuant to 42 USC § 1983, Defendant GCSD owed Plaintiff certain duties to properly hire, supervise, monitor, train, control and/or discipline the above-named individual Defendant as well as its other Officers so as not intentionally violate the constitutional rights of individuals with respect to interacting with dogs while on duty.

75. Defendant GCSD is liable pursuant to 42 USC §1983, and *Monell v Department of Social Services,* 436 US 658 (1978), in that its policies, procedures, regulations, and customs, or that it failed to enact policies, procedures, regulations, and customs, such that such policies, procedures, regulations, and customs, or lack thereof, caused and was the driving force behind the violation of Plaintiff's constitutional rights as alleged in this Complaint.

76. Defendant GCSD, through its policies, procedures, regulations, or customs, or lack thereof, breached its duties, which amounted to reckless indifference toward the constitutional rights of the general public, and toward Plaintiff specifically, in the following ways including, but not limited to:

- a) Failing to properly train its officers, including the above-named individual Defendants, with respect to an arrestees' religious beliefs;

- b) Failure to properly train its officers, including the above-named individual Defendants, concerning the proper ways to not remove religious headscarves like Plaintiffs;

- c) Failure to hire and/or retain officers whose character and personality would not substantially burden a Muslim female like Plaintiff's right to free exercise;

- d) Failure to adequately monitor the conduct and behavior of its officers in general, but specifically the above-named individual Defendants, relative to past similar incidents and failure to sufficiently punish officers for past similar incidents that has led to the formation of a custom that such misconduct will be encouraged and tolerated;

- e) Failure to have proper policies, procedures, and training to deal with a Muslim women's right to free exercise including wearing a religious headscarf;

- f) Maintaining a blanket policy that prohibits the wearing of religious headscarves without just cause;

- g) Failure to properly screen, supervise, discipline, transfer, counsel or otherwise control officers, including the above-named individual Defendants,

who are known or should have been known to violate a Muslim women's right to free exercise;

h) Failure to supervise and/or train Officers to prevent violation of the Constitution;

i) Sanctioning the violation of an arrestee's right to free exercise by failing to adequately discipline or terminate officers who were known to have violated the Constitutional right of citizens on prior occasions, including but not limited to the above-named individual Defendants;

j) Having a custom, policy, or practice of tolerating the violation of constitutional rights by officers;

k) Ratifying the violation of constitutional rights by officers;

l) Having a policy that requires the blanket removal of religious headscarves for booking photographs;

m) Failing to have policies that accommodate religious beliefs, such as Plaintiff's;

n) Other acts and omissions which may be learned through the course of discovery.

77. Defendant GCSD was thus deliberately indifferent to the rights of others in adopting its hiring, retention, and training practices, and in failing to supervise, control, and/or discipline the individual Defendants such that those failures reflected a deliberate or conscious decision made from various alternatives.

78. Defendant GCSD was thus deliberately indifferent to the rights of Muslim females by maintaining policies that knowing and deliberately violated Plaintiff's sincerely held religious beliefs;

79. Defendant GCSD's above-referenced deficiencies were the moving force that caused Plaintiff's constitutional deprivation.

80. If Defendant GCSD had maintained adequate policies and/or properly hired, trained, supervised, controlled, and/or disciplined the individual Defendants, the constitutional violations committed by the Defendants would not have occurred.

81. Defendant's policies, procedures, regulations, and customs, and/or its failure to enact the same, caused and was the driving force behind the violations of Plaintiff's constitutional rights as alleged in this Complaint.

82. Defendant's employees and/or representatives did in fact participate in, encourage, and/or tacitly allow the blatant impairment of Plaintiff's constitutional rights.

83. Upon information and belief, Defendant GCSD either had a policy expressly prohibiting the wearing of religious headscarves, or had no policy or training in place in how to properly interact with a Muslim female whose known religious beliefs required the wearing of a religious headscarf, which was evident in Defendants' actions alleged herein.

84. Defendant's callous and repeated disregard of Plaintiff's constitutional rights rises to the level of deliberate indifference.

85. Defendant's conduct in allowing and adopting the unconstitutional burden on Muslim women's right to free exercise, was done with malice and/or reckless indifference towards Plaintiff's First Amendment rights and was provided for by either Defendant's existing policies or lack thereof.

86. Defendant and its agents/representatives and decision-makers had actual and/or constructive knowledge that GCSD officers, specifically but not limited to the above-referenced Defendants, had tendencies and inclinations to unconstitutionally force Muslim females to remove their religious headscarves.

87. As a direct and proximate result of the above-referenced Defendant's unlawful and unconstitutional conduct, Plaintiff has suffered and will continue to suffer actual damages and mental anguish, physical and emotional distress, humiliation, mortification, and embarrassment.

88. Pursuant to 42 USC §§1983 and 1988, Defendant is liable to Plaintiff for all damages allowed under federal law, including but not limited to actual, compensatory and attorney fees. To the extent that the damages allowable and/or recoverable under one or both statutes are deemed insufficient to fully compensate Plaintiff and/or to punish or deter the Defendants, this Court must order additional damages to be allowed so to satisfy any and all such inadequacies. The conduct of

Defendants was and remains extreme and outrageous subjecting Defendants to punitive damages.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against Defendants, jointly and severally, in an amount in excess of $75,000, plus costs, interest, and attorney fees, as well as punitive, compensatory, actual and/or exemplary damages so wrongfully incurred, as the Court deems just.

## **JURY DEMAND**

NOW COMES PLAINTIFF, Cora Cave, by and through her attorneys, Rasor Law Firm, PLLC, and hereby makes demand for trial by jury.

RASOR LAW FIRM, PLLC

 /s/ James B. Rasor  
BRANDON T. WOLFE (P82421)  
Attorney for Plaintiff  
201 E. Fourth Street  
Royal Oak, Michigan 48067  
248/543-9000  
jbr@rasorlawfirm.com

Dated:  August 26, 2020